**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | Superior Court ID Nos. |
| | ) | 1411010147, 1411010184, |
| | ) | 1507000990, 1602018220 |
| v. | ) | |
| | ) | Supreme Court Nos. |
| | ) | 242/243/244/245, 2016 |
| | ) | |
| ANDREW WILSON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

The Supreme Court has remanded this matter and directed this court to rule on defendant's motion for a reduction of sentence (which was filed during the pendency of his appeal) on or before October 10, 2016. For the following reasons, the court **DENIES in part** Defendant's motion and **DEFERS** a ruling on one of his arguments so that he may have an opportunity to supplement the record with respect to one of his arguments.

*Procedural History*

Defendant entered a guilty plea to two counts of Home Improvement Fraud in one case (Case 1507000990; the "2015 Case.") and a single count of Home Improvement Fraud in another case (1602018220; the "2016 Case"). He was sentenced to a total of two years six months at Level 5 followed by decreasing terms of probation for those convictions. At the time of the offense

giving rise to the 2016 Case Defendant was on probation for earlier convictions of Home Improvement Fraud, Felony Theft and Forgery second degree (1411010147; the "2014 Case"). At the time he was sentenced for his convictions in the 2015 and 2016 Cases, Defendant was also sentenced found in violation of his probation in the 2014 Case and sentenced an additional year at Level 5 (also followed by probation) for his violation of probation. His Level 5 sentences for the 2014, 2015 and 2016 Cases are to be served consecutively.

Defendant appealed his sentences to the Delaware Supreme Court. While his appeal was pending he filed a motion for a reduction of sentence in this court pursuant to Superior Court Criminal Rule 35. This court has discretionary jurisdiction under Rule 35 to hear a motion for a reduction of sentence while a defendant has a direct appeal pending before the Delaware Supreme Court.[1] In a letter dated August 5, 2016 this court declined to entertain that motion while defendant's appeal was still pending because the record was then lodged with the Clerk of the Supreme Court. Thereafter the defendant and the State stipulated in the Supreme Court to a remand of this matter, with jurisdiction retained by the Supreme Court. This court now has the record available to it, and this is its ruling on the motion for reduction of sentence.

### *Defendant's arguments*

Defendant makes the following arguments why his sentence should be reduced. The arguments are quotations from the headings in his motion.

[1] Superior Court Criminal Rule 35.

1.    The court sentenced Mr. Wilson on the basis of inaccurate information by using an inaccurate aggravating factor of lack of remorse.

2.    The date of April 8 on the sentencing order along with the inaccurate aggravating factor of a lack of remorse provides evidence that Mr. Wilson may have been sentenced with a closed mind.

3.    As for the violation of probation counts, Mr. Wilson did not have an opportunity to hear competent evidence or allegations and respond appropriately.

4.    The SENTAC Statement of Policy discusses avoiding, so far as possible, the incarceration of the non-violent offender for the purposes of restitution, rehabilitation and conserving limited incarceration facilities.

5.    An attached PFE report details admissions to Rockford and MeadowWood in 2011 and 2013 along with Cocaine and marijuana use.  Mr. Wilson believes that he would benefit from a program of rehabilitation such as Crest.

*Analysis*

The court notes at the outset that it is unnecessary to conduct a hearing to resolve most of Defendant's contentions.  Criminal Rule 35 provides that a "motion for reduction of sentence will be considered without presentation,

3

hearing or argument unless otherwise ordered by the court."[2]  The court finds that all but one of Defendant's contentions are facially without merit and therefore no further presentation is necessary.  It finds, however, a hearing on Defendant's contention he is in need of mental health and substance abuse treatment will be useful.

The court will discuss the arguments in the order Defendant presents them in his motion.  The headings for each argument are quotations taken from his motion.

> *1.   The court sentenced Mr. Wilson on the basis of inaccurate information by using an inaccurate aggravating factor of lack of remorse.*

The motion is predicated on the idea that the basis for the court's decision to exceed guidelines is the Defendant's lack of remorse.  He overlooks, however, that the primary aggravating factor was Defendant's history of stealing from or defrauding other people.  At the sentencing the court announced:

> I find one substantial aggravating factor here, and that
> is the lengthy history of living off other people's money
> or using other people's money.

(Defendant's failure to mention this in his motion is understandable, given that he did not have access to the sentencing transcript when he filed his time-sensitive motion.)  Further, there is substantial evidence supporting the notion that Defendant lacked remorse.

---

[2]  *Superior Court Criminal Rule* 35(b).

4

*a. Defendant had a lengthy history of defrauding others.*

The record overwhelmingly supports the court's finding that Defendant had a lengthy history of cheating others. Defendant was convicted of the following offenses:

| Date | Crime |
|---|---|
| 1995 | Burglary second (juvenile) |
| 1999 | Felony theft |
| 2003 | Issuing bad check (misdemeanor) |
| 2003 | Issuing bad check (misdemeanor) |
| 2005 | Issuing a bad check (felony)(account not open) |
| 2010 | Issuing a bad check (misdemeanor)(account not open) |
| 2011 | Issuing a bad check (felony)(insufficient funds) |
| 2012 | Felony theft |
| August, 2013 | Home Improvement Fraud |
| September, 2013 | Home Improvement Fraud |
| September, 2014 | Theft (felony) |
| October 23, 2014 | Forgery 2nd degree |

Defendant's frauds are apparently not confined to Delaware. At the time of sentencing he was wanted for three counts of felony theft in Maryland.

Another measure of Defendant's avarice and disregard for others is the lengths to which he would go to conceal his fraud from his victim. While

5

working for a company known as Moon Heating and Air Conditioning, Defendant serviced an HVA system for a 63 year old woman. He told the victim she needed a new air conditioning system which he could install for her at a cheaper price because his father, who owned an HVAC business (which was untrue), had recently died (which was untrue) and Defendant was taking over his business (which was untrue). The victim agreed to purchase a TRANE system from Defendant which he was to install. Instead of the TRANE for which the victim paid, however, Defendant installed a less expensive Ameristar system. The victim brought this to Defendant's attention, whereupon Defendant promised to remedy the situation. He then removed the installed Ameristar system and later installed a purported "TRANE" system. Unknown to the defendant, the victim marked the Ameristar system with a felt tip pen. When defendant installed the ostensible new TRANE system the victim found the same ink mark on it. Defendant had simply glued a TRANE logo over the Ameristar logo and re-installed the Ameristar system.[3]

The victim of some of Defendant's frauds painted a vivid picture of the effect of Defendant's conduct. Andrew Miller and his wife Michele were co-owners of Miller Heating and Cooling, LLC. Apparently Defendant obtained HVAC equipment from suppliers using Miller Heating's trade account. Defendant then installed the equipment on one of his private side-jobs without

---

[3] Defendant also argues that the notation in the presentence report (which was written for the 2015 Case) that the "offender did not provide a statement" to the presentence investigator is not useful because, in Defendant's words, "it is unclear whether the pre-sentence office attempted to get a statement from [Defendant]."[3] This ostensible lack of clarity rests on Defendant's shoulders. The pre-sentence investigation report, in which the comment appears about Defendant's failure to provide a statement, was available to the Defendant prior to his sentencing hearing. If, as he seems to suggest, he was not as asked by the pre-sentence investigator to give a statement, he was given ample opportunity to clarify the matter at his sentencing. Yet he offered no explanation.

reimbursing Miller Heating for the charges to its trade accounts. Eventually Mr. Miller got wind of what was happening and confronted Defendant. Defendant told Mr. Miller he would reimburse him. Defendant later gave Mr. Miller a check for $12,000 drawn on Defendant's father's account. It turns out Defendant stole the blank check and there were insufficient funds in the account to cover the check. According to Mr. Miller the defendant appeared to be keeping payments from Miller Heating's customers for himself. Mr. Miller learned of this only when he went to collect bills which he believed were overdue but which had been paid, only to have the payment intercepted by Defendant. In other instances, Defendant wore Miller Heating tee shirts or used Miller Heating's name when attempting to defraud people. Customers later began to call Miller Heating asking for Defendant to come back to complete the work, and Miller Heating never heard of the customer. Mr. Miller's name was in the name of his business and he was understandably proud of it. Defendant left the business and Mr. Miller's reputation in shambles.

### b. Defendant's lack of remorse

Defendant argues that his demeanor at sentenced, which he characterized in his motion as uncontrollable crying, demonstrates he is remorseful. The court's conclusion that Defendant lacked true remorse is not based on his demeanor at sentencing; rather it is based on the fact that he committed a Home Improvement Fraud between December 23, 2015 and

7

January 16, 2016[4]--nine months after being arraigned on charges of Home Improvement Fraud and Theft.[5]  Even more disturbing, he committed the new offenses *less than a week* after being given a break by this court and being placed on probation for his convictions in the 2014 Case.[6]  This leads the court to conclude Defendant lacked remorse, irrespective of the volume of tears he shed at sentencing.

> *2.  The date of April 8 on the sentencing order along with the inaccurate aggravating factor of a lack of remorse provides evidence that Mr. Wilson may have been sentenced with a closed mind.*

Defendant correctly points out that his sentencing order is dated April 8, 2016 but he was sentenced on April 15.  There is no doubt that the incorrect date on the sentence order is regrettable, but Defendant does not explain how this evidenced the court had a closed mind when it sentenced him.

> *3.   As for the violation of probation counts, Mr. Wilson did not have the opportunity to hear the competent evidence or allegations and respond appropriately.*

In a Notice of Probation Violation, Defendant's probation officer cited him for matters such as breach of curfew and his failure to attend a meeting with his probation officer.  Defendant is correct he would be entitled to a hearing on such allegations if he wished to contest his probation violation.  But these are not the reasons why Defendant's probation was violated.  At the hearing the

---

[4]  Information in Case No. 1602018220 [D.I.2].  Defendant admitted in his plea colloquy that between December 23, 2015 and January 16, 2016 he advised Susan Sheehan that she needed work done on her home, he took money from her to do it and never completed the work. (Tr.  12-13).

[5]  Case number  1411010184  [D.I. 4].

[6]  Defendant had not yet been placed on probation in his 2015 Case when he committed the crime giving rise to the 2016 Case.  Hence his violation is only for the 2014 Case.

court told defendant "You are adjudged to be in violation of your probation by virtue of your conviction in [1602018220]." A condition of every probation is that the defendant not commit a new offense. Defendant was on probation for his conviction in the 2014 Case when, on December 23, 2014 through January 16, 2016, he committed the offense which eventually led to his guilty plea in the 2016 Case.[7] That guilty plea in the 2016 Case established as a matter of law the violation of probation.[8] There was therefore no need to present evidence of his violation.

The court notes in passing that the violation of probation did not come as a surprise to Defendant. During the plea hearing and sentencing in the 2016 Case the following colloquy took place between Defendant's counsel and the court:

> DEFENDANT'S COUNSEL: Your Honor, it's my understanding that there's also a VOP associated with Mr. Wilson on this calendar.
>
> THE COURT: Okay.
>
> DEFENDANT'S COUNSEL: I just wanted to make sure that's going to be addressed also, Your Honor.[9]

Defendant made no request for an evidentiary hearing nor did he suggest he was contesting the alleged violation of probation.

---

[7] Defendant was placed on probation on December 18, 2015. (Case No. 1411010147; D.I. 14).

[8] *State v. Conaway*, 2015 WL 9007728 at *1 (Del. Super.)("A new conviction is a violation of probation as a matter of law.").

[9] Tr. 17.

*4. The SENTAC Statement of Policy discusses avoiding, so far as possible, the incarceration of the non-violent offender for the purposes of restitution, rehabilitation and conserving limited incarceration facilities.*

Defendant points to the general policy favoring rehabilitation of non-violent offenders through means other than incarceration at Level 5. In this instance that policy takes on less importance because on at least ten prior occasions Mr. Wilson was given the opportunity for rehabilitation at custody levels short of Level 5. Yet each time he has committed a new crime where he has cheated someone out of his or her money. Most striking of all, and as mentioned earlier, Defendant committed his latest Home Improvement Fraud five days after being placed on probation for the same crime.

*5. An attached PFE report details admissions to Rockford and Meadow Wood in 2011 and 2013 along with Cocaine and marijuana use. Mr. Wilson believes that he would benefit from a program of rehabilitation such as Crest.*

Defendant asserts he is in need of mental health and substance abuse treatment, and he correctly notes the sentences imposed by the court do not require him to be evaluated and treated for any such disability. He suggests that he would benefit from a program such as CREST, which is a Level 4 program.

The basis for Defendant's argument is a report of a psycho-forensic evaluation performed by Michelle Michini-Adam, MS. For the most part that report was based upon information provided by Defendant, interviews of two persons acquainted with Defendant and records from Rockford Center for a stay in 2011. The court is concerned about the reliability of any report which is

based in large part on the history recounted by Defendant. For example, Defendant reported he had been hospitalized twice in 2013 for mental health issues, but no records from those stays were available to the psycho-forensic evaluator. Yet in the TIS form Defendant signed on July 21, 2015 he reported he had never been a patient in a mental hospital.[10] The reliability of information conveyed by Defendant is also brought into question by the litany of excuses he has used throughout his adult life. A letter from his former employer, Mr. Miller, contains a summary of excuses offered by Defendant which would have made Maxwell Klinger proud:

- Numerous injuries and emergency room visits for his sons, including one where the son was hit in the head with a baseball bat

- Defendant's future mother-in-law was kicked in the head by a horse and had to be airlifted so she could get emergency surgery

- Defendant's fiancé went to rehab

- Defendant's fiancé left him and their sons

- Defendant's grandmother passed away

- Defendant's grandfather had a heart attack at grandmother's funeral and later died

---

[10] Case 1411010184; D.I. 21. Defendant did report being a patient in a mental hospital in the TIS forms filed in his 2015 and 2016 Cases. Defendant's reliability is also called into question by his plea for leniency at the instant sentencing. At his April 15, 2016 sentencing, when asking for probation, he told the court "I have never violated probation in my life." In point of fact, however, the court found him in violation of probation July 13, 2000.

- Defendant's mother had a nervous breakdown following the loss of both of her parents

- A customer reported that Defendant told him that Mr. Miller had been electrocuted while on a job, that Defendant had to rush him to the emergency room, and Mr. Miller would be unable to work for a while

- A customer of one of Defendant's side jobs told Mr. Miller that Defendant told the customer he had never completed the side job because his son was diagnosed with cancerous tumors and required surgery

The psycho-forensic report contains few concrete conclusions. The gist of its clinical impression and recommendation is:

> It is evident that Mr. Wilson has struggled with self-acceptance for years. While he has also experienced symptoms of mental illness since he was an adolescent, and later struggled with substance dependence, he has never received adequate treatment. At this point in his life, Mr. Wilson would benefit from a dual diagnosis treatment plan and substance dependence issues.

The court understands the constraints the psycho-forensic evaluator was working under. No one asked her to conduct an evaluation until after Defendant was sentenced and she was then working under the 90 day deadline imposed by Criminal Rule 35. (This explains the absence of any records relating to the alleged 2013 hospitalizations.) Because Defendant is not a reliable historian, the court is unwilling to modify the sentence it imposed

based upon the present report.  However, it believes Defendant should be given the opportunity (and time) to prepare a supplemental report based in greater part on his past treatment records.  Accordingly the court will schedule an evidentiary hearing at which time Defendant may present any additional evidence of his need for mental health or substance abuse treatment.

_____/ s /_____

Dated: August 31, 2016                     Judge John A. Parkins, Jr.

oc:     Prothonotary

cc:     Elizabeth R. McFarlan, Esquire, Department of Justice, Wilmington, Delaware
        James O. Turner, Jr., Esquire, Office of the Public Defender, Wilmington, Delaware